[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 252.]

THE STATE EX REL. US AIRWAYS, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. US Airways, Inc. v. Indus. Comm*., 2000-Ohio-68.]

*Workers' compensation—Industrial Commission's order fails to cogently explain the evidence and reasoning for granting a violation of a specific safety requirement award—Cause returned to commission to conduct further proceedings and to provide adequate explanation as to why the VSSR award must be granted or denied.*

(No. 99-2—Submitted August 22, 2000—Decided November 8, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD11-1448.

_____

{¶ 1} Appellant, US Airways, Inc., seeks a writ of mandamus to vacate the order of appellee Industrial Commission of Ohio granting an additional award to appellee Paul D. Myers due to US Airways' violation of a specific safety requirement ("VSSR"). The Court of Appeals for Franklin County denied the writ, finding that the commission's VSSR order was not an abuse of discretion. US Airways appeals as of right.

{¶ 2} In December 1992, Myers lost the first four toes on his right foot while working for US Airways as a customer service representative/ramp agent. He was attempting to free baggage jammed in an overhead conveyor belt system when a co-worker accidentally activated the conveyor section where he was working. Myers's foot was caught between two conveyor sections, one of which was running backward due to the improper installation of a motor by maintenance workers. The improperly installed motor caused the two belt sections to run toward each other, rather than in the same direction.

**{¶ 3}** On the day of the accident, Myers had responded to a jam alarm by shutting down the system and climbing in. He found a huge baggage jam, so he crawled out, called for maintenance, and climbed back in to start separating the bags for transport to the appropriate aircraft. While inside the conveyor system, Myers had another employee activate the last part of the conveyor so that Myers could toss the bags down to that section as he worked his way back. The other employee remained stationed to guard that control; however, a maintenance worker activated the entire system with another control, unaware that Myers was inside. Before the conveyor belt system could be shut down, Myers's foot became caught between the belt section running backwards and the adjacent section.

**{¶ 4}** Myers's workers' compensation claim was allowed for "crush injury to right foot; traumatic amputation to right # 1 through # 4 toes." He applied for additional VSSR compensation, alleging that US Airways had violated Ohio Adm.Code 4121:1-5-17(E), among other safety requirements. Ohio Adm.Code 4121:1-5-17(E) requires employers to provide "foot protection" whenever machinery, equipment, or duties present an employee "foot hazard."

**{¶ 5}** Initially, a commission staff hearing officer ("SHO") found that US Airways had not committed this VSSR. The SHO concluded that (1) airline policy forbade ramp agents from clearing baggage jams while the conveyor system was in operation, and (2) lack of foot protection was not the proximate cause of Myers's injury because synchronized belts would not have drawn in his foot.

**{¶ 6}** Myers moved for rehearing. He submitted affidavits from a ramp supervisor and a ramp agent, neither of whom had testified at the first hearing. The affidavits indicated that ramp agents regularly cleared baggage jams by deactivating only part of the conveyor system, and that conveyors create a foot hazard whether they are operating properly or not. Another SHO considered this evidence additional and new and, pursuant to Ohio Adm.Code 4121-3-20(G), granted rehearing.

**{¶ 7}** On rehearing, the SHO found that US Airways had violated the foot protection requirement; however, despite the new affidavits, the SHO observed:

"There is no evidence [that] it was possible to be caught at the junction of the two conveyor belts other than when they were running in opposite directions, which in this case was due to the improper installation of the drive motor following maintenance."

**{¶ 8}** The SHO then found a violation of Ohio Adm.Code 4121:1-5-17(E), but his explanation had little to do with Myers's conveyor injury:

"As is shown by the foot injuries co-workers sustained from tongues of carts being dropped on their feet (testimony of [the ramp supervisor]), as well as the regular work of lifting luggage, it is found that [Myers] and his co-employees were 'exposed to machinery or equipment that presents a foot hazard or where an employee is handling material which presents a foot hazard.' The employer's defense that the luggage is neither hard nor heavy enough to do any damage if dropped is unpersuasive in light of the injuries co-workers have sustained. As claimant's injury was having his foot crushed by machinery, at the very least had he been wearing steel-toed shoes his injuries would have been lessened. [Ohio Adm.Code] 4121:1-5-17(E) does not require an employer to require the use of foot protection, nor even to provide foot protection, but if the requirement means anything it means something more than forbid the use of foot protection. Employer herein made no provision to make such protection available."

**{¶ 9}** Several months later, the SHO issued a "corrected" order acknowledging a clerical omission of the word "not" from the above passage, and amended it by substituting this still perplexing passage:

"[Ohio Adm.Code] 4121:1-17(E) [*sic,* 4121:1-5-17(E)] does not require an employer to require the use of foot protection, nor even to provide foot protection, but if the requirement means anything it means something more than *not* forbid the use of foot protection." (Emphasis added.)

**{¶ 10}** The commission subsequently denied US Airways' request for rehearing on the ground that it lacked jurisdiction under Ohio Adm.Code 4121-3-20(G)(4) (rehearing orders final). The denial prompted US Airways to file this mandamus action in the court of appeals.

_____

*Day, Ketterer, Raley, Wright & Rybolt, Ltd., Darrell N. Markijohn* and *Aaron E. McQueen,* for appellant.

*Betty D. Montgomery*, Attorney General, and *Cheryl J. Nester,* Assistant Attorney General, for appellees Industrial Commission and Administrator, Ohio Bureau of Workers' Compensation.

_____

***Per Curiam.***

**{¶ 11}** Although US Airways submits five propositions of law, these are reviewable in the context of just two overriding issues: (1) Did the commission abuse its discretion in granting rehearing? and (2) Is the commission's VSSR order fatally unclear? For the reasons that follow, we hold that new and additional evidence permitted the commission's decision to grant rehearing but that the commission failed to cite evidence from which it could have legitimately assessed a VSSR. Accordingly, we reverse the court of appeals' judgment denying all relief and grant a limited writ ordering the commission's further review.

*Rehearing*

**{¶ 12}** US Airways first argues that the commission had no new and additional evidence justifying rehearing. We reject this argument for the reasons cited by the court of appeals.

**{¶ 13}** The court of appeals properly recognized that the supervisor's affidavit, at least, constituted new and additional evidence. As its magistrate explained:

"In contending that the information contained in [the supervisor's] affidavit is not new evidence, but merely repetitive or cumulative of prior evidence, [US Airways] simply ignores the significance of the *source* of the information contained in the affidavit. As the ramp supervisor, Gregory Prewitt was presumably Myers' supervisor and also was a company official with some authority over the area in which Myers worked.

"Prewitt's affidavit seriously undermined [US Airways'] evidence that company policy forbade employees such as Myers from entering the conveyor while the system was energized.

"Prewitt's affidavit seriously undermined the factual premise of the first hearing officer's decision that [US Airways] had not violated Ohio Adm.Code 4121:1-5-17(E). The first hearing officer reasoned that there was no foot hazard to Myers from the conveyor system while Myers was carrying out his assigned duties because his assigned duties did not require him, and in fact forbade him, to enter or stay in the conveyor system while it was operating. Prewitt's affidavit strongly suggests that it was indeed company policy that required or at least permitted Myers and his co-workers to do exactly what they did on the date of injury in attempting to clear the jammed bags."

{¶ 14} Thus, the court of appeals' judgment on this issue is affirmed.

*Clarity*

{¶ 15} Ohio Adm.Code 4121:1-5-17(E) provides:

"Foot protection shall be made available by the employer and shall be worn by the employee where an employee is exposed to machinery or equipment that presents a foot hazard or where an employee is handling material which presents a foot hazard."

{¶ 16} The commission initially found no violation of this safety regulation because Myers was never "exposed to machinery" in a way that presented a foot hazard. The first SHO came to this conclusion for two reasons: (1) Myers was not

"exposed to contact" as defined by Ohio Adm.Code 4121:1-5-01(B)(47), which requires the exposure to occur "in performance of [the employee's] regular or assigned duty," and (2) Myers was injured by the improper motor installation and not by the conveyor system *per se*. For both findings, the SHO relied on a US Airways customer service manager's affidavit, which stated that (1) airline policy prohibited employees from standing on or entering any conveyor unless the entire system was shut down, and (2) conveyor belts properly running in the same direction would not have created the "pinch point" that caused Myers's injury.

{¶ 17} But on rehearing, Gregory Prewitt, who had worked for US Airways for thirteen years and had been a ramp supervisor on the day of Myers's injury, advised:

1. "It [was] a common practice for [US Airways] employees at the Columbus station to keep the system of conveyors operating by standing on a down section of conveyor (just as [Myers] did) and throwing bags moving down the conveyor sections from the ticket counter to the conveyor sections still moving to the bag room."

2. "Everyone knew that when the conveyor system shut down, you had to do whatever it took to keep the conveyor system operating and the bags moving."

3. "It [was] a normal part of our assigned job duties to climb into the system of conveyors."

4. "[T]he Columbus manager * * * never objected to this procedure."

5. The customer service manager who had testified for US Airways in the first VSSR hearing "[had] not [been] assigned to Columbus at the time of [Myers's] accident."

{¶ 18} Prewitt also disputed the first SHO's finding that the incorrect motor installation was the proximate cause of Myers's injury:

"It does not take two in-running conveyor sections to be caught. Although it would be easier to be drawn between two conveyor sections when the conveyor

sections are running together, the same type of accident could occur when one conveyor section is down and the abutting conveyor is running."

{¶ 19} As the court of appeals observed, Prewitt contradicted the first SHO's reasons for denying VSSR relief and, therefore, his evidence was "new and additional" as well as relevant, and might have been used to grant VSSR compensation on rehearing. Ohio Adm.Code 4121-3-20(G)(1)(a). But for some reason, the second SHO apparently did not consider the real substance of Prewitt's affidavit, choosing instead to focus on foot injuries sustained by Myers's co-workers from other hazards such as handling luggage and using carts. The result is an overreaching discussion that creates more confusion than clarity.

{¶ 20} More specifically, the second SHO found a VSSR at the same time he observed that no evidence suggested that the particular foot hazard encountered by Myers could possibly have been foreseen by US Airways. Then to justify his award, the SHO relied on foot hazards that were not the cause of Myers's injury. US Airways attacks these flaws on grounds of causation, foreseeability, and strict construction, all of which represent strains in its overriding theme – that the order is fatally unclear.

{¶ 21} We agree. As it stands now, the commission's order is too confused to fairly impose VSSR liability. The commission has no authority to penalize an employer for failing to protect employees from foot hazards that have nothing to do with the claimant's injury. In fact, we recently rejected this sweeping approach to finding VSSRs for "potential" foot hazards in *State ex rel. Burchfield v. Printech Corp.* (1998), 83 Ohio St.3d 169, 699 N.E.2d 56. *Burchfield* held that even if a foot hazard existed in the claimant's workplace, the commission could not grant a VSSR award unless that foot hazard actually caused the claimant's injury.

{¶ 22} We are thus faced with a commission order that fails to cogently explain the evidence and reasoning for granting a VSSR award. In a similar case, *State ex rel. Martin Painting & Coating Co. v. Indus. Comm.* (1997), 78 Ohio St.3d

333, 343, 678 N.E.2d 206, 214, we returned the cause to the commission with instructions to remedy this insufficiency.  We follow that procedure here and grant a limited writ.  The commission is therefore ordered to conduct further proceedings consistent with our opinion including to provide adequate explanation as to why the VSSR award must be granted or denied.

*Judgment affirmed in part,*
*reversed in part*
*and limited writ granted.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment.

_____